## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Consumer Financial Protection Bureau and the People of the State of New York, by Eric T. Schneiderman, Attorney General for the State of New York,<br><br>Plaintiffs,<br><br>v.<br><br>Douglas MacKinnon, Mark Gray, Northern Resolution Group, LLC, Enhanced Acquisitions, LLC, and Delray Capital, LLC,<br><br>Defendants. | Civil Action No. _____<br><br><br>**COMPLAINT** |

The Consumer Financial Protection Bureau (Bureau) and the People of the State of New York bring this action against Defendants Douglas MacKinnon, Mark Gray, Northern Resolution Group, LLC (NRG), Enhanced Acquisitions, LLC (Enhanced), and Delray Capital, LLC (Delray) and allege as follows:

### INTRODUCTION

1.   This case involves a massive, illegal debt-collection scheme designed, implemented, and run by Douglas MacKinnon and his close associate, Mark Gray.

2.   MacKinnon and Gray created a network of interrelated companies to purchase defaulted consumer-debt portfolios for pennies on the dollar and then collect on them illegally.

3.   MacKinnon established NRG and Enhanced, and Gray and MacKinnon created Delray, to purchase tens of millions of dollars' worth of defaulted consumer debt.

4.   NRG, Enhanced, and Delray routinely added $200 to each debt they acquired, regardless of whether the underlying contracts or applicable law permitted it.

5.   NRG, Enhanced, and Delray then either collected the inflated debts themselves or sent them for collection to dozens of debt-collection shops MacKinnon controlled. Delray also collected on debt as a third-party agency.

6.   Enhanced and Delray have engaged in a host of illegal acts in collecting these inflated debts. Among other things, Enhanced and Delray have impersonated law-enforcement officials, court officials, and others; and threatened consumers with arrest or legal action the firms had no intention of taking.

7.   MacKinnon and Gray have profited handsomely from this scheme, which has raked in tens of millions of dollars from millions of consumers nationwide.

8.   Defendants' illegal debt-collection practices violate the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), 5536(a), the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p, N.Y. Executive Law 63(12), and N.Y. General Business Law §§ 349 and 601.

## JURISDICTION AND VENUE

9.   This Court has subject-matter jurisdiction over this action because it is brought under "Federal consumer financial law," 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

10. This Court has supplemental jurisdiction over New York's state-law claims because they are so related to the federal claims that they form part of the same case or controversy. 28 U.S.C. § 1367(a).

11. Venue is proper in this District because a substantial part of the events or omissions giving rise to the claims occurred here and Defendants do business here. 28 U.S.C. § 1391(b)(2); 12 U.S.C. § 5564(f).

## PARTIES

12. The Bureau is an independent agency of the United States charged with regulating the offering and provision of consumer-financial products and services under Federal consumer financial laws. 12 U.S.C. § 5491(a). The Bureau has independent litigating authority to enforce Federal consumer financial laws, including the CFPA and the FDCPA. 12 U.S.C. §§ 5564(a)-(b); 5481(12), (14).

13. The State of New York is one of the 50 sovereign states of the United States. The State of New York, by its Attorney General, is authorized to take action to enjoin (i) repeated and persistent fraudulent and illegal business conduct under

NewYork Executive Law § 63(12), (ii) deceptive business practices under NewYork General Business Law § 349, and (iii) illegal debt-collection practices under NewYork General Business Law § 602, and to obtain legal, equitable, or other appropriate relief for such violations.

14.  NRG is a Delaware limited-liability company with its principal place of business at 7288 Shawnee Road, North Tonawanda, New York, 14120. As a significant part of its business, NRG collects debts related to consumerfinancial products and services, including payday loans. Those activities are "consumer financial products and services" under the CFPA. 12 U.S.C. § 5481(5), 15(A)(x). NRG is therefore a "covered person" under the CFPA. 12 U.S.C. § 5481(6).

15.  Enhanced is a New York limited-liability company with its principal place of business at 3840 East Robinson Road, Suite 353, Amherst, New York 14228. As a significant part of its business, Enhanced collects debts related to consumer-financial products and services, including payday loans. Those activities are "consumer financial products and services" under the CFPA. 12 U.S.C. § 5481(5), 15(A)(x). Enhanced is therefore a "covered person" under the CFPA. 12 U.S.C. § 5481(6).

16.  Delray is an Ohio limited-liability corporation that conducts a substantial amount of business from its offices at 26 North Webster Street, Tonawanda, New York 14120. As a significant part of its business, Delray collects debts related to consumer-financial products and services, including payday loans. Those activities are

"consumer financial products and services" under the CFPA. 12 U.S.C. § 5481(5), 15(A)(x). Delray is therefore a "covered person" under the CFPA. 12 U.S.C. § 5481(6).

17.  MacKinnon is the managing member and owner of NRG, the managing member of Enhanced, and the director of operations for Delray. He has managerial responsibility for NRG, Enhanced, and Delray, and has materially participated in the conduct of their affairs. MacKinnon is therefore a "related person" under the CFPA. 12 U.S.C. § 5481(25)(C)(i), (ii). Because MacKinnon is a "related person," he is deemed a "covered person" for purposes of the CFPA. 12 U.S.C. § 5481(25)(B).

18.  Mark Gray is the managing member and owner of Delray. He has managerial responsibility for Delray and has materially participated in the conduct of its affairs. Gray is therefore a "related person" under the CFPA. 12 U.S.C. § 5481(25)(C)(i), (ii). Because Gray is a "related person," he is deemed a "covered" person for purposes of the CFPA. 12 U.S.C. § 5481(25)(B).

## FACTS

19.  At least since 2009, MacKinnon and Gray have used three companies to purchase defaulted consumer debt for pennies on the dollar: NRG, Enhanced, and Delray.

20.  MacKinnon established NRG in 2009. NRG purchased millions of dollars' worth of defaulted consumer debt, reported the debts to consumer-reporting agencies, and collected some of those debts directly.

21.  In or around January 2014, NRG changed its name to Enhanced, but the company's business and practices continued unchanged. Like NRG, Enhanced purchased and collected on millions of dollars of defaulted consumer debt and reported the debts to consumer-reporting agencies. MacKinnon and Gray determined the debt portfolios NRG and Enhanced would purchase and negotiated the acquisitions.

22.  In 2012, MacKinnon and Gray learned that a debt seller from which NRG and Enhanced purchased payday-loan debt would no longer sell to or place debt with companies that did not purportedly have collection policies and procedures in place that complied with the FDCPA. NRG and Enhanced did not have such policies and procedures in place.

23.  Hoping to continue purchasing or collecting on debt from this debt-seller, MacKinnon and Gray, in 2012, created Delray to acquire millions of dollars' worth of payday-loan debts from the debt-seller and also to collect on debt for third parties.

24. Gray was Delray's owner and managing member. MacKinnon provided the financing for Delray's operations as well as employees and office space for the company.

25. Delray's written collection policies and procedures were little more than "window dressing"; they did not reflect Delray's actual practices. Nonetheless, Delray continued to acquire debt from the debt seller, and to collect on debt for third parties.

26. Like NRG and Enhanced, Delray not only acquired defaulted debts, but it also collected some of those debts. In addition, Delray collected debts purchased by NRG and Enhanced.

27. MacKinnon set up a network of at least 60 debt-collection firms (the MacKinnon Collection Shops) to collect on the debt portfolios that NRG, Enhanced, and Delray purchased.

28. On paper, the MacKinnon Collection Shops are purportedly independent companies, owned and operated by others. In reality, MacKinnon controlled each of them. MacKinnon selected the managers and routinely provided them with office space, furniture, phone services, collection software, call-spoofing programs, and, occasionally, funds for payroll. MacKinnon also developed and monitored the collection practices of these firms, setting performance targets and collection strategies. A list of known MacKinnon Collection Shops is attached as Exhibit A.

29. At MacKinnon's direction, NRG, Enhanced, and Delray have added $200 to each portfolio debt they acquired, regardless of whether applicable state law or the underlying consumer contract permitted such fees or charges. Indeed, the companies added this sum even though some of the purchase agreements under which they

acquired the debt expressly prohibited them from imposing any additional fees or charges.

30. NRG, Enhanced, and Delray uploaded each portfolio debt – with the inflated amounts – into a database used by collection agents seeking to collect on the debts.

31. When collecting on the debts directly, NRG, Enhanced, and Delray tried to collect the face amounts of the debts as well as the additional $200 the companies tacked onto them. And the debts farmed out to the MacKinnon Collection Shops for collection likewise have the extra $200 tacked on to them.

32. Delray and Enhanced have routinely engaged in a wide range of deceptive collection tactics to extract as much money as possible from consumers.

33. Those tactics include:

    a. impersonating law-enforcement officials, government agencies, and court officers;

    b. threatening arrest or legal action the collectors have no intention of taking;

    c. using call-spoofing technologies to make it appear that collectors are calling from government agencies; and

    d. further inflating the amounts owed by tacking on additional unauthorized fees and charges to the debts.

34.   For example, in late 2013, an Enhanced collection agent called a consumer posing as someone from the "Los Angeles County Courts." The collection agent said the consumer would be "arrested" for "check fraud" and advised that she "did not have the time to get a lawyer" because she would be arrested at her home or work the next day if she did not pay. The collection agent continued to barrage the consumer and her relatives with calls, claiming to be a government official who could arrest the consumer for non-payment of the debt.

35.  In another example, a consumer received multiple calls in May 2014 from collection agents claiming lawsuits had been filed against her. The collectors sent the consumers emails purporting to be from a court. They also repeatedly contacted the consumer at work and contacted her relatives about the debt. The consumer later learned that the collectors were actually calling from Enhanced and were Enhanced collection agents.

36.  Delray collectors also routinely deceived consumers about prosecutions being initiated against them. Delray's scripts direct collectors to tell consumers the following: "You need to be aware of multiple fraud charges being filed against you in ___ County. It is imperative I speak with you to debrief you on your case and retain a statement in your defense. Failure to respond will result in you forfeiting your right to settle this case on a voluntary basis and it will be forwarded out for prosecution."

37. Enhanced and Delray never referred a case for "prosecution" or even filed a debt-collection lawsuit against a consumer.

38. An August 2014 audit of Delray conducted by a debt-seller from whom the company both acquired debt and did third-party collection highlighted the rampant misconduct Delray collectors engaged in. Among other things, the audit found that Delray collectors (a) threatened "pending court action, garnishment," and suits for fraud or breach of contract; (b) falsely claimed to be "a paralegal"; (c) gave "false and misleading information"; (d) "inflated the current placed balance, at times quoting a balance exceeding 600% of the debt amount"; (e) failed to give required notice letters to consumers upon initial contact; and (f) failed to provide consumers with "mini-Miranda" warnings and disclose that calls were being recorded.

39. At the time of the audit, Gray was the managing member of Delray and oversaw its operations. MacKinnon and Gray were aware of the audit, and Delray's illegal collection practices continued, including after MacKinnon later became head of Delray's operations.

40. Enhanced and Delray have received numerous complaints and inquiries from consumers, government agencies, and consumer organizations about their collection practices. In many instances where they received an inquiry from a government agency or the Better Business Bureau about a consumer complaint, the

companies blamed an outside agency for the misconduct. MacKinnon and Gray were aware of these complaints and inquiries.

41.  At all times material to this complaint, MacKinnon was the owner and managing member of NRG and the manager of Enhanced. MacKinnon determined which debt portfolios the firms purchased and which firm collected those debts. He managed each firm's employees and developed, directed, and monitored their collection policies and practices. MacKinnon caused NRG and Enhanced to add the extra $200 described above to each debt the firms purchased.

42.  At all times material to this complaint, Gray was the owner and managing member of Delray. Along with MacKinnon, Gray determined which debt portfolios Delray purchased, negotiated the purchase agreements, developed the firm's collection practices, and directed and monitored Delray's collection activities. Gray also received and handled complaints made about Delray to one of the firms from which Delray acquired debts.

43.  In addition, at all times material to this complaint, MacKinnon has provided financing for Delray's debt purchases, provided employees and office space for the company, and served as Delray's head of operations. MacKinnon, along with Gray, also caused Delray to add $200 to each debt it acquired.

44.  Through consumer complaints, government investigations, lawsuits, and debt-buyer audits, as well as his control, direction, and monitoring of the firms'

collection activities, MacKinnon knew or should have known of the illegal debt-collection practices engaged in by NRG, Enhanced, and Delray. MacKinnon did not stop or prevent these acts, despite having the authority and control to do so. Instead, MacKinnon directed and encouraged these illegal acts by NRG, Enhanced, and Delray.

45.  In fact, beginning in January 2015, in part due to these consumer complaints, government investigations, lawsuits, and debt-buyer audits, MacKinnon and Gray began operating Delray using additional corporate names, including Sullivan Asset Management, Solidus, and Clear Credit Solutions. The company engaged in the same illegal debt-collection practices when operating under these names.

46.  Through consumer complaints, government investigations, lawsuits, and debt-buyer audits, as well as his control, direction, and monitoring of the firms' collection activities, Gray knew or should have known of Delray's illegal debt-collection practices. Despite having the authority and control to do so, Gray did not stop or prevent these acts. Like MacKinnon, Gray directed and encouraged these illegal practices.

47.  The reason for this is clear: MacKinnon and Gray have profited significantly from these illegal debt-collection tactics. A substantial portion of the proceeds from the illegal debt-collection scheme – which amounted to tens of millions of dollars annually – have been funneled back to MacKinnon, his relatives,

and Gray through payments to NRG, Enhanced, and sham companies that

MacKinnon, Gray, and MacKinnon's relatives controlled.

### COUNT I

*Unfairness Under the CFPA Relating to the Collection of, and Attempts to Collect, Inflated Debts*
*– by Plaintiffs Against All Defendants*

48. The Bureau and the State of New York reallege and incorporate by

reference paragraphs 1-47.

49. Section 1036(a)(1)(B) of the CFPA prohibits "unfair" acts or practices. 12

U.S.C. § 5536(a)(1)(B). An act or practice is unfair if it causes or is likely to cause

consumers substantial injury, which is not reasonably avoidable and is not outweighed

by countervailing benefits to consumers or to competition. *See* 12 U.S.C. § 5531(c).

50. NRG, Enhanced, and Delray routinely added $200 to each debt they

purchased, even though the underlying consumer contracts or relevant state law did

not permit it. NRG, Enhanced, and Delray sought to collect these inflated debts

directly or indirectly through the MacKinnon Collection Shops.

51. By inflating the amounts owed on the debts they purchased, collected, or

attempted to collect, NRG, Enhanced, and Delray caused and were likely to cause

consumers to suffer substantial injury. Consumers, unaware that sums unauthorized

by contract or relevant law had been added to the amounts NRG, Enhanced, Delray

and the MacKinnon Collection Shops (directly or indirectly through the MacKinnon

Collection Shops) claimed they owed, were likely to, and often did, pay sums they did not owe.

52. Consumers could not reasonably avoid this injury, as they were unlikely to know that the sums owed had been inflated or that the additional fees and charges were not permitted under the relevant contract or state law.

53. The substantial injury caused by charging consumers sums they do not owe is not outweighed by any countervailing benefits to consumers or competition.

54. Therefore, NRG, Enhanced, and Delray have engaged in "unfair" acts and practices under §§ 1036(a)(1)(B) and 1031(a) of the CFPA. 12 U.S.C. §§ 5536(a)(1)(B), 5531(c)(l).

55. MacKinnon and Gray knew or should have known that NRG, Enhanced, and Delray were inflating the amounts consumers owed on acquired debts and attempting to collect, or have others collect, on them. MacKinnon and Gray, however, took no steps to stop or prevent these wrongful acts, even though they had authority to do so. In addition, MacKinnon and Gray engaged in the wrongful practices by, for example, setting the policy of adding $200 to each debt.

56. MacKinnon and Gray are therefore liable for these violations of the CFPA.

## COUNT II

*Deception Under the CFPA Relating to Collection of, and Attempts to Collect, Inflated Debts — by Plaintiffs Against All Defendants*

57.  The Bureau and the State of New York reallege and incorporate by reference paragraphs 1-47.

58.  Section 1036(a)(1)(B) of the CFPA prohibits deceptive acts or practices. 12 U.S.C. § 5536(a)(1)(B). An act or practice is deceptive if it involves a material misrepresentation that misleads, or is likely to mislead, a consumer acting reasonably under the circumstances.

59.  NRG, Enhanced, and Delray routinely added $200 to each debt they purchased, even though the underlying consumer contracts or relevant state law did not permit it. NRG, Enhanced, and Delray sought to collect these inflated debts directly or indirectly through the MacKinnon Collection Shops.

60.  In seeking to collect those inflated amounts, NRG, Enhanced, and Delray thus falsely represented to consumers, both expressly and impliedly, that consumers owed sums they did not in fact owe and were not obligated to pay and that the companies had a legal right to collect such sums from consumers.

61.  These false and misleading misrepresentations were material and likely to mislead consumers acting reasonably into paying sums they did not owe and were not obligated to pay.

62. Accordingly, NRG, Enhanced, and Delray's collections and attempts to collect, directly or indirectly, debts inflated by unauthorized fees and charges constituted deceptive acts and practices under §§ 1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

63. MacKinnon and Gray knew or should have known that NRG, Enhanced, and Delray were inflating the amounts consumers owed on acquired debts and attempting to collect on them. MacKinnon and Gray, however, took no steps to stop or prevent these wrongful acts, even though they had authority to do so. In addition, MacKinnon and Gray engaged in this practice by, for example, setting the policy of adding $200 to each debt.

64. MacKinnon and Gray are therefore liable for these violations of the CFPA.

### COUNT III
*Deception Under the CFPA Related to Threats and Impersonation – by Plaintiffs Against Enhanced, Delray, MacKinnon, and Gray*

65. The Bureau and the State of New York reallege and incorporate by reference paragraphs 1-47.

66. An act or practice is deceptive under the CFPA if it involves a material misrepresentation that misleads, or is likely to mislead, a consumer acting reasonably under the circumstances.

67. In collecting and attempting to collect debts from consumers, Enhanced and Delray collectors routinely:

a. threatened consumers with arrest, imprisonment, or other legal action they had no intention of taking; and

b. impersonated law-enforcement officials, court officials, and other entities.

68. These false representations were material and likely to mislead consumers acting reasonably under the circumstances to pay sums they may not have owed, in whole or in part, or to give greater priority to those debts over others. To avoid the threat of criminal prosecution, prison, or lawsuits, consumers were likely to pay amounts demanded by collectors posing as law-enforcement officials or threatening legal action they did not intend to pursue, or could not pursue, regardless of whether the consumers owed the amounts or whether they had more pressing obligations to pay.

69. As a result, Enhanced and Delray's misrepresentations were deceptive acts and practices under §§ 1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

70. MacKinnon and Gray knew or should have known that Enhanced and Delray were engaging in these deceptive and misleading acts in collecting and attempting to collect debts but took no steps to stop or prevent them, even though they had authority to do so. In addition, MacKinnon and Gray engaged in this

practice by, for example, setting, approving and directing the firms' unlawful collection policies and activities.

71. MacKinnon and Gray are therefore liable for these violations of the CFPA.

## COUNT IV
*False or Misleading Misrepresentations Under the FDCPA –*
*by the Bureau Against All Defendants*

72. The Bureau realleges and incorporates by reference paragraphs 1-47.

73. NRG, Enhanced, and Delray are each "debt collectors" under the FDCPA. 15 U.S.C. § 1692a(6).

74. Section 807 of the FDCPA, 15 U.S.C. § 1692e, prohibits debt collectors from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

75. Section 807(2)(A) of the FDCPA, 15 U.S.C. § 1692e(2)(A), specifically prohibits debt collectors from making false representations of the character, amount, or legal status of any debt.

76. Section 807(10) of the FDCPA, 15 U.S.C. § 1692e(10), further prohibits debt collectors from using false representations or deceptive means to collect or attempt to collect any debt.

77. In collecting and attempting to collect debts from consumers, NRG, Enhanced, and Delray represented, directly or indirectly, and expressly or impliedly, that consumers owed those debts in the amounts demanded.

78. In fact, NRG, Enhanced, and Delray routinely inflated the amounts owed by adding unauthorized charges, fees, and other sums to the debts.

79. These representations by NRG, Enhanced, and Delray were false and misleading and constitute deceptive practices under § 807 of the FDCPA, 15 U.S.C. § 1692e, 1692e(2)(A) & 1692e(10).

80. MacKinnon is extensively involved in the debt-collection activities of NRG, Enhanced, and Delray. He determines the debt portfolios they buy; manages their debt-collection staff; and oversees and monitors their collection activities. In addition, he set and approved their collection policies and practices and directed their unlawful collection activities, including their practice of adding $200 to each debt the firms acquired. As such, MacKinnon is a "debt collector" under the FDCPA and is liable for NRG, Enhanced, and Delray's violations of the statute.

81. Gray is also extensively involved in Delray's debt-collection activities. Along with MacKinnon, he determines the debt portfolios Delray buys; manages the company's debt-collection staff; and oversees and monitors collection activities. In addition, he set and approved Delray's collection policies and practices and directed its unlawful collection activities, including its practice of adding $200 to each debt Delray acquired. As such, Gray is a "debt collector" under the FDCPA and is liable for Delray's violations of the statute.

**COUNT V**

*Unfair Collection Activities Under the FDCPA – by the Bureau Against All Defendants*

82.  The Bureau realleges and incorporates by reference paragraphs 1-47.

83.  NRG, Enhanced, and Delray are "debt collectors" under the FDCPA. 15 U.S.C. § 1692a(6).

84.  Section 808(1) of the FDCPA, 15 U.S.C. § 1692f(1), bars the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

85.  NRG, Enhanced, and Delray routinely added $200 to each debt they purchased, even though the underlying consumer contracts or relevant state law did not permit it, and then collected or attempted to collect the inflated amount.

86.  These were unfair acts under § 808(1) of the FDCPA, 15 U.S.C. § 1692f(1).

87.  MacKinnon is extensively involved in the debt-collection activities of NRG, Enhanced, and Delray. He determines the debt portfolios they buy; manages their debt-collection staff; and oversees and monitors their collection activities. In addition, he set and approved their collection policies and practices and directed their unlawful collection activities, including their practice of adding $200 to each debt the firms acquired. As such, MacKinnon is a "debt collector" under the FDCPA and is liable for NRG, Enhanced, and Delray's violations of the statute.

88. Gray is also extensively involved in Delray's debt-collection activities. Along with MacKinnon, he determines the debt portfolios Delray buys; manages the company's debt-collection staff; and oversees and monitors collection activities. In addition, he set and approved Delray's collection policies and practices and directed its unlawful collection activities, including its practice of adding $200 to each debt Delray acquired. As such, Gray is a "debt collector" under the FDCPA and is liable for Delray's violations of the statute.

## COUNT VI
*False and Misleading Representations Under the FDCPA – by the Bureau Against Enhanced, Delray, MacKinnon, and Gray*

89. The Bureau realleges and incorporates by reference paragraphs 1-47.

90. Enhanced and Delray are "debt collectors" under the FDCPA. 15 U.S.C. § 1692a(6).

91. Section 807 of the FDCPA, 15 U.S.C. § 1692e, prohibits debt collectors from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

92. Section 807(1) of the FDCPA, 15 U.S.C. § 1692e(1), specifically prohibits collectors from falsely representing or implying that they are affiliated with the United States or any state.

93. Section 807(4) of the FDCPA, 15 U.S.C. § 1692e(4), further bars collectors from falsely representing or implying that non-payment of a debt will result in the

arrest or imprisonment of any person unless such action is lawful and the debt

collector intends to take such action.

94. Section 807(5) of the FDCPA, 15 U.S.C. § 1692e(5), expressly prohibits

debt collectors from threatening to take any action that cannot legally be taken or is

not intended to be taken.

95. Section 807(7) of the FDCPA, 15 U.S.C. § 1692e(7), in turn, prohibits debt

collectors from falsely representing or implying that the consumer committed a crime

or other conduct in order to disgrace the consumer.

96. Section 807(10) of the FDCPA, 15 U.S.C. § 1692e(10), bars debt collectors

from using false representations or deceptive means to collect or attempt to collect

any debt.

97. Section 807(14) of the FDCPA, 15 U.S.C. § 1692e(14), further prohibits

debt collectors from using any name other than the true name of the debt collector's

business, company, or organization in collecting debts.

98. In collecting and attempting to collect debts from consumers, Enhanced

and Delray collectors routinely:

> a.  threaten consumers with arrest, imprisonment, or other legal action
>
>     they had no intention of taking;
>
> b.  falsely accuse consumers of having committed crimes by not paying
>
>     their debts;

    c.  inflate the amounts allegedly owed by consumers even though the additional fees, charges, and sums added were not permitted under the relevant contracts or state law; and

    d.  impersonate law-enforcement officials, court officials, and other entities.

99. Enhanced and Delray's representations to consumers are false and misleading and constitute deceptive practices under § 807 of the FDCPA, 15 U.S.C. § 1692e, 1692e(1), (4)-(5), (7), (10), (14).

100.   MacKinnon is extensively involved in the debt-collection activities of Enhanced and Delray. He determines the debt portfolios they buy; manages their debt-collection staff; and oversees and monitors their collection activities. In addition, he set and approved their collection policies and practices and directed their unlawful collection activities, including their practice of adding $200 to each debt the firms acquired. As such, MacKinnon is a "debt collector" under the FDCPA and is liable for Enhanced and Delray's violations of the statute.

101.   Gray is also extensively involved in Delray's debt-collection activities. Along with MacKinnon, he determines the debt portfolios Delray buys; manages the company's debt-collection staff; and oversees and monitors collection activities. In addition, he set and approved Delray's collection policies and practices and directed its unlawful collection activities, including its practice of adding $200 to each debt

Delray acquired. As such, Gray is a "debt collector" under the FDCPA and is liable for Delray's violations of the statute.

## COUNT VII
*Violations of the CFPA Arising from FDCPA Violations –*
*by the Bureau Against All Defendants*

102.   The Bureau realleges and incorporates by reference paragraphs 1-47.

103.   Section 1036(a)(1)(A) of the CFPA provides that is "unlawful for . . . any covered person or service provider . . . to offer or provide to a consumer any financial product or service not in conformity with Federal consumer financial law, or otherwise commit any act or omission in violation of a Federal consumer financial law." 12 U.S.C. § 5536(a)(1)(A).

104.   Because NRG, Enhanced, Delray, MacKinnon, and Gray are "covered persons" who violated the FDCPA, they also violated § 1036(a)(1)(A) of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

## COUNT VIII
*Repeated Fraudulent or Illegal Acts – by the State of New York*
*Against All Defendants*

105.   The State of New York realleges and incorporates by reference paragraphs 1-47.

106.   New York Executive Law § 63(12) empowers the Attorney General to seek restitution and injunctive relief when any person or business entity has engaged

in repeated fraudulent or illegal acts or otherwise demonstrates persistent fraud or illegality in the carrying on, conducting, or transaction of business.

107.   Defendants have engaged in repeated fraudulent or illegal acts or otherwise demonstrated persistent fraud or illegality in the carrying on, conducting, or transaction of their debt-collection businesses for purposes of Executive Law § 63(12).

## COUNT IX
*Deceptive Acts or Practices – by the State of New York Against All Defendants*

108.   The State of New York realleges and incorporates by reference paragraphs 1-47.

109.   New York General Business Law § 349 provides that "[d]eceptive acts or practices in the conduct of any business […] in this state are hereby declared unlawful."

110.   In numerous instances, Defendants have violated New York General Business Law § 349 by engaging in deceptive acts or practices in connection with conducting their debt collection businesses.

## COUNT X
*Violation of New York State Debt Collection Law – by the State of New York Against All Defendants*

111.   The State of New York realleges and incorporates by reference paragraphs 1-47.

112.    New York General Business Law § 601 sets forth a list of prohibited debt collection practices, including:

a.      simulating in any manner a law-enforcement officer, or a representative of any governmental agency of the state of New York or any of its political subdivisions,N.Y. Gen. Bus. Law § 601(1);

b.      knowingly collecting, attempting to collect, or asserting a right to any collection fee, attorney's fee, court cost or expense unless such charges are justly due and legally chargeable against the debtor,N.Y. Gen. Bus. Law § 601(2);

c.      threatening any action which the debt collector in the usual course of its business does not in fact take, N.Y. Gen. Bus. Law § 601(7);

d.      claiming or attempting or threatening to enforce a right with knowledge or reason to know that the right does not exist (N.Y. Gen. Bus. Law § 601(8)); and

e.      using a communication which simulates in any manner legal or judicial process or which gives the appearance of being authorized, issued, or approved by a government, governmental agency, or attorney-at-law when it is not. N.Y. Gen. Bus. Law § 601(9).

113.    In numerous instances, Defendants have violated New York General Business Law § 601 by engaging in prohibited debt-collection practices under that statute.

## DEMAND FOR RELIEF

Wherefore, the Plaintiffs request that the Court:

1.   permanently enjoin Defendants from committing future violations of the CFPA, the FDCPA, N.Y. General Business Law Articles 22-A and 29-H, and N.Y. Executive Law § 63(12);

2.   award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the CFPA, the FDCPA, New York General Business Law Articles 22-A and 29-H, and New York Executive Law § 63(12), including but not limited to rescission or reformation of contracts, restitution, and the refund of monies paid;

3.   pursuant to New York General Business Law § 350-d, impose a civil penalty of $5,000 for each violation of New York General Business Law Article 22-A;

4.   grant additional injunctive relief as the Court may deem to be just and proper;

5.   order disgorgement of ill-gotten revenues against Defendants;

6.   as authorized under the CFPA, impose civil money penalties against Defendants;

7.  order Defendants to pay Plaintiffs' costs in connection with this action; and

8.  award additional relief as the Court may determine to be just and proper.

Respectfully submitted,

Dated: November 2, 2016

Anthony Alexis
*Enforcement Director*
Jeffrey Paul Ehrlich
*Deputy Enforcement Director*
John C. Wells
*Assistant Litigation Deputy*

s/Stefanie Isser Goldblatt
Stefanie Isser Goldblatt
Jade A. Burns

Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Telephone: (212) 328-7011
Facsimile: (212) 328-7050
Email: stefanie.goldblatt@cfpb.gov
*Attorneys for Consumer Financial Protection Bureau*

Eric T. Schneiderman
Attorney General of the State of New York

s/James M. Morrissey
James M. Morrissey
Assistant Attorney General
350 Main Street, Suite 300A
Buffalo, NY 14202
Telephone: (716) 853-8471
Email: james.morrissey@ny.ag.gov